IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BERNARD HUGH OLSON,<br><br>Petitioner,<br><br>vs.<br><br>MARTIN FRINK; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 14-29-H-DLC-JTJ<br><br>FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |

Petitioner Bernard Hugh Olson has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Pet. (Doc. 1). Olson is a state prisoner proceeding pro se.

**I. Background**

Olson challenges the revocation of three consecutive five-year suspended sentences. In 1996, Olson was convicted of three felony counts of sexual assault. On each count, he was sentenced to serve fifteen years in prison, with five years suspended. All counts ran consecutively. In total, his sentence was 30 years in prison, plus 15 years suspended. Judgment (Doc. 7-1) at 3. The judgment also contained the following pertinent provisions:

> The Court recommends the defendant not be eligible for parole until he successfully completes all sex offender treatment recommendations.
>
> The foregoing sentences shall run consecutively to each other,

1

upon the following conditions:

. . .

    4. The defendant shall participate in sex offender therapy with a[ Montana Sex Offender Treatment Association (MSOTA)] certified therapist and shall remain in treatment as recommended by his supervising officer and therapist. The defendant shall comply with all requirements of the program and shall waive any rights of confidentiality which he may have associated with his treatment so that his therapist may advise his supervising office [sic] of any non-compliance.

. . .

    The reasons for the foregoing sentence are that the defendant is not amenable to community treatment; the defendant is at high risk to reoffend; the defendant's offenses are predatory in nature; and, the defendant reoffended within four (4) months after his release in Washington.

Judgment (Doc. 7-1) at 3, 6.

Based on the date of his conviction and sentence, Olson earned day-for-day good time.[1] He was scheduled to discharge his full prison term in January 2011.

On December 16, 2010, Candice Anderson, a probation and parole officer at Montana State Prison, submitted a Report of Violation "to revoked [sic] the defendant's suspended sentence for failure to complete or enter into sex offender treatment while at Montana State Prison." Carter Report of Violation at 1 (Doc. 1-1) at 1. Based on Anderson's report, the Lewis and Clark County Attorney filed a petition to revoke Olson's suspended sentences immediately upon his discharge from prison. *See* Carter Report at 2.

---

[1] Montana's law authorizing good time was repealed effective July 31, 1997. Mont. Code Ann. § 53-30-105(1) (1995); 1997 Mont. Laws ch. 372, §§ 12(2), 13.

On January 2, 2011, Anderson reviewed with Olson the conditions of his suspended sentence. A Report of Violation subsequently prepared by Probation and Parole Officer Annette Carter avers:

> The defendant noted "NO" under Special Condition #18: Counseling/Treatment/Programming: Sex Offender Counseling & Other Programming as ordered by the Court/BOPP and determined by the Probation and Parole Officer and Special Condition 23: The Defendant shall participate in sex offender therapy with an MSOTA certified therapist and shall remain in treatment as recommended by his supervising officer and therapist. The Defendant shall comply with all requirements of the program and shall waive any rights of confidentiality which he may have associated with his treatment so that his therapist may advise his supervising officer of any non-compliance. He signed the remaining conditions "Under Protest."

Carter Report at 1 (Doc. 1-1) at 1.

On January 19, 2011, Olson was released from Montana State Prison. Based on the County Attorney's pending petition to revoke his suspended sentence, he was immediately transported to the Lewis and Clark County jail upon his release.

On January 26, 2011, the Montana Supreme Court issued a decision overruling four published opinions and holding a district court did not have authority to revoke a suspended sentence based on a petition filed before the commencement of a suspended term. *State v. Stiffarm*, 250 P.3d 300, 303 (Mont. 2011).[2] Accordingly, on January 28, 2011, the County Attorney dismissed the

---

[2] As the Montana Supreme Court urged in its conclusion, the Montana Legislature amended the statute, effective April 20, 2011, to authorize filing of a petition to revoke "before the period of suspension or deferral has begun or during the period of suspension or deferral but

3

then-pending petition to revoke Olson's suspended sentence. Carter Report at 2 (Doc. 1-1 at 2).

On the same day, Annette Carter again reviewed with Olson the conditions of his suspended sentence. *Id.* Olson signed Special Conditions Numbers 18 and 23 "under protest." Carter wrote:

> When asked directly if he would actively participate in treatment he refused to answer my question. He was given [phone numbers for three MSOTA-certified treatment providers in the Helena area] and told to contact them on 1/31/2011. His only response was that he felt he had a right to convince a therapist that he does not need treatment. Upon reporting on 2/1/2011, he stated that he left a message with one of the providers.

Carter Report at 2 (Doc. 1-1 at 2). When he submitted the Carter Report with his federal habeas petition, Olson added, near the above-quoted language, three handwritten comments: "If I am going to convince a therapist I would need to actively interact with a treatment provider. All 3 providers are prison providers"; "There are [other providers] in Montana besides the ones that practice in the prison. I was not given a chance to contact any of the others"; and "Given this info [e.g., treatment providers' phone numbers] on Friday afternoon I called the only Helena number Monday morning 1/31/2011." Carter Report at 2 (Doc. 1-1) at 2.

On January 28, 2011, Olson was released to begin serving his suspended sentence. In the habeas petition he filed in the Montana Supreme Court, Olson

---

not after the period has expired." 2011 Mont. Laws ch. 230, § 1; Mont. Code Ann. § 46-218-203(2) (2011).

alleged that he reported to his supervising probation officer on February 1, 2011. She "immediately told me that she had contacted every SOP provider in the area and none would accept me into their groups because I was in denial regarding my guilt. Without further discus[s]ion I was then immediately arrested, handcuffed and taken to jail." Olson was held in jail until his suspended sentences were revoked on August 4, 2011. He was sentenced to serve each consecutive full suspended term in prison, for a total of 15 years. State Habeas Pet. at 4, *Olson v. Frink*, No. OP 13-0787 (Mont. Nov. 26, 2013).[3] He was given credit for time served between January 19, 2011, and January 28, 2011, as well as time served between his arrest on February 1 or February 2, 2011, and the revocation hearing on August 4, 2011. *See* Reply at 2 (Doc. 1-1 at 5); Order at 2, *Olson*, No. OP 13-0787 (Mont. Feb. 18, 2014).

Olson did not appeal the revocation and did not pursue postconviction relief.

On November 26, 2013, Olson filed a petition for writ of habeas corpus in the Montana Supreme Court. He argued the revocation of his suspended time was "completely unreasonable and unconstitutional" because he was "punished when attempting to comply with a court order, but not given a reasonable opportunity to do so." *Id.* at 4-5. He also claimed he was "illegally imprisoned for nine days longer than my Original Judgment allowed" because he was transported from

---

[3] Olson's state habeas petition, the State's response, and the Montana Supreme Court's order are available at http://supremecourtdocket.mt.gov (accessed June 16, 2015).

prison to jail on January 19, 2011. *Id.* at 3. The State filed a response on February 10, 2014. *See* Resp. to Pet., *Olson*, No. OP 13-0787 (Mont. filed Feb. 10, 2014).

On February 18, 2014, the Montana Supreme Court dismissed the habeas petition because, under Montana law, the writ of habeas corpus "is not available to attack the legality of an order revoking a suspended or deferred sentence." Mont. Code Ann. § 46-22-101(2). The Court also held that Olson had not "carried the burden of establishing that his sentences are not correctly calculated." Order at 2, *Olson*, No. OP 13-0787 (Mont. Feb. 18, 2014).

Olson states that he received the State's response on March 5, 2014, and attempted to file a reply showing the correct calculation of his sentence, but the Court rejected it. The case had already been closed by the time the reply was received. *See* Reply (Doc. 1-1 at 4-8); Clerk Letter (Doc. 1-1 at 9); Case Register at 1 (Doc. 1-1 at 10).

Olson filed his federal habeas petition on April 22, 2014. Pet. at 8 ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

## II. Olson's Claims and Analysis

### A. Release Date

Olson's federal petition alleges that he was not released from custody on January 19, 2011, when he should have been released. Pet. (Doc 1) at 4 ¶ 13A.

A habeas petition is an appropriate vehicle under state law for a Montana

6

prisoner to show that a release date is or was not correctly calculated. Mont. Code Ann. § 46-22-101(1); Order at 2, *Olson*, OP 13-0787. The Court will assume, solely for the sake of argument, that Olson should have been permitted to file his reply in an attempt to carry the burden of showing that he was illegally incarcerated.

But, even taking the reply at face value, Olson fails to show that his sentence was not correctly calculated. He was released from prison on January 19, 2011, but he was transported to jail because the County Attorney had already filed a petition to revoke his suspended sentences. *See* Mont. Code Ann. § 46-18-203(1). On January 26, 2011, when the Montana Supreme Court issued its decision in *Stiffarm*, it became clear that the petition had to be dismissed. It was dismissed on January 28, 2011, and Olson was released the same day. Moreover, Olson received credit against the sentence he is now serving for the time he spent in custody between January 19 and January 28, 2011. This claim should be denied because Olson was not deprived of any cognizable federal right. 28 U.S.C. § 2254.

**B. Other Claims**

Olson makes three other claims for relief. First, he contends he made a good-faith effort to comply with the conditions imposed by the trial court, Pet. at 4 ¶ 13A, because he called the MSOTA-certified treatment provider in Helena (though not the two in Deer Lodge), but that person was not available. He suggests he

prisoner to show that a release date is or was not correctly calculated. Mont. Code Ann. § 46-22-101(1); Order at 2, *Olson*, OP 13-0787. The Court will assume, solely for the sake of argument, that Olson should have been permitted to file his reply in an attempt to carry the burden of showing that he was illegally incarcerated.

But, even taking the reply at face value, Olson fails to show that his sentence was not correctly calculated. He was released from prison on January 19, 2011, but he was transported to jail because the County Attorney had already filed a petition to revoke his suspended sentences. *See* Mont. Code Ann. § 46-18-203(1). On January 26, 2011, when the Montana Supreme Court issued its decision in *Stiffarm*, it became clear that the petition had to be dismissed. It was dismissed on January 28, 2011, and Olson was released the same day. Moreover, Olson received credit against the sentence he is now serving for the time he spent in custody between January 19 and January 28, 2011. This claim should be denied because Olson was not deprived of any cognizable federal right. 28 U.S.C. § 2254.

**B. Other Claims**

Olson makes three other claims for relief. First, he contends he made a good-faith effort to comply with the conditions imposed by the trial court, Pet. at 4 ¶ 13A, because he called the MSOTA-certified treatment provider in Helena (though not the two in Deer Lodge), but that person was not available. He suggests he

prisoner to show that a release date is or was not correctly calculated. Mont. Code Ann. § 46-22-101(1); Order at 2, *Olson*, OP 13-0787. The Court will assume, solely for the sake of argument, that Olson should have been permitted to file his reply in an attempt to carry the burden of showing that he was illegally incarcerated.

But, even taking the reply at face value, Olson fails to show that his sentence was not correctly calculated. He was released from prison on January 19, 2011, but he was transported to jail because the County Attorney had already filed a petition to revoke his suspended sentences. *See* Mont. Code Ann. § 46-18-203(1). On January 26, 2011, when the Montana Supreme Court issued its decision in *Stiffarm*, it became clear that the petition had to be dismissed. It was dismissed on January 28, 2011, and Olson was released the same day. Moreover, Olson received credit against the sentence he is now serving for the time he spent in custody between January 19 and January 28, 2011. This claim should be denied because Olson was not deprived of any cognizable federal right. 28 U.S.C. § 2254.

**B. Other Claims**

Olson makes three other claims for relief. First, he contends he made a good-faith effort to comply with the conditions imposed by the trial court, Pet. at 4 ¶ 13A, because he called the MSOTA-certified treatment provider in Helena (though not the two in Deer Lodge), but that person was not available. He suggests he

intended to meet subsequently with that person to demonstrate that he was not in need of sex offender treatment.

Second, he claims that his rights are being violated because the transcript of his trial in 1996 is no longer available and it "was essential when I would have seen a MSOTA certified therapist." Pet. at 5 ¶ 13B. The Court understands Olson to allege he is entitled to obtain the transcript for the purpose of showing a therapist why he does not need sex offender treatment. *See* Notice (Doc. 8) at 1 ("the actual testimony would show why I deny guilt").

Finally, Olson seeks "immediate release [because] I discharged my original sentence and my revoked sentence is enhanced." Pet. at 7 ¶ 16. By stating the revocation sentence was "enhanced," Olson apparently means the trial court declared him ineligible for parole until he successfully completes Phases I and II of the sex offender treatment program at the prison. *See* State Habeas Pet. at 2; Carter Report at 2 (Doc. 1-1 at 2) (first handwritten notation under "Adjustment to Supervision" stating "No Court 'ordered' only Court 'recommended' until I was given an enhanced sentence when revoked.").

Generally, a state prisoner must first present in state court each claim on which he seeks relief in federal court, *Rose v. Lundy*, 455 U.S. 509, 520 (1982), and he must do so by using those remedies the State makes available, 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Olson's good-

faith attempt to comply and his claim regarding an "enhanced" revocation sentence were mentioned in his state habeas petition, but the Montana Supreme Court dismissed Olson's state habeas petition on the grounds that habeas relief is not available under state law to challenge a revocation. Olson's state habeas petition did not mention access to the trial transcript. None of these claims, therefore, were fairly presented in state court. Because no further remedy is available to him under state law, he is deemed to have exhausted his state remedies, but the claims are procedurally defaulted.

A federal habeas court may not hear the merits of any procedurally defaulted claim unless the petitioner excuses the default. This Court explained to Olson ways in which he might demonstrate an excuse for his default and gave him the opportunity to do so. (Doc. 10). While Olson did respond to the Court's Order (Doc. 11), he has failed to establish adequate cause to excuse the default.

The procedural default doctrine and its attendant "cause and prejudice" standard are "grounded in concerns of comity and federalism," *Coleman v. Thompson*, 501 U.S. 722, 730 (1991), and apply whether the default in question occurred at trail, on appeal, or on state collateral attack. *Murray v. Carrier*, 477 U.S. 478, 490-492 (1986). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*,

9

501 U.S. at 732. A prisoner must demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim. *Id*. at 750; *Edwards v. Carpenter*, 529 U.S. 466, 451 (2000).

To establish cause for a procedural default, "a petitioner must demonstrate that the default is due to an external objective factor that cannot fairly be attributed to him." *Smith*, 510 F. 3d 1127, 1146. The courts have recognized various categories of claims that constitute cause for a procedural default. In *Murray*, the Supreme Court stated one example of cause to be "some interference by officials [that] made compliance [with procedural rules] impracticable." 447 U.S. at 488. The Ninth Circuit held that prison officials' interference with a petitioner's access to administrative remedies can be cause for a procedural default. *Francis v. Rison*, 894 F.2d 353, 355 (9th Cir. 1990).

To satisfy the fundamental miscarriage of justice exception to procedural default, "prisoners . . . must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House v. Bell*, 547 U.S. 518 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This standard "does not require absolute certainty about the petitioner's guilt or innocence." *Id*. at 538. To be credible, an actual-innocence claim must be supported by "new reliable evidence—whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Further, this fundamental miscarriage-of-justice exception is only applied in extraordinary cases. *Id.* at 327.

Olson first argues that his own lack of legal knowledge and resources contributed to his default. He alleges that "[b]y the time someone can self-teach without teaching aids enough to know what and how to file[,] they are time-barred." (Doc. 11-1) at 9. This is not a legitimate excuse or an objective external factor that prevented Olson from raising his claims in state court. Olson's limited legal training is not akin to official interference with his attempts to raise claims. A pro se petitioner's lack of legal sophistication alone is not an extraordinary circumstance to excuse prompt filing. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). Olson's explanation does not constitute cause.

Olson then argues that his default should be excused because he was never provided a copy of his trial transcript. His explanation is less than clear, but Olson seems to believe that the trial transcript would show both cause and prejudice for the default and would demonstrate that he is actually innocent. (Doc. 11-1) at 11. As stated above, for cause to exist, the external impediment must have prevented Petitioner from raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497-98, (1991). In reference to the transcript, Olson states: "Lewis and Clark Recorders

11

have refused to provide even when I offered to pay for them. Could this court tell me if I had a secret trial and why?" (Doc. 11-1) at 11. Olson seems to intimate that he was obstructed from obtaining the transcript, but he does not say what this transcript would have shown, or how not having physical possession of it prevented him from developing a factual or legal basis for his claims. Olson fails to demonstrate how not having the transcript amounts to cause for procedural default.

Olson also seems to argue that this missing transcript would show that he is innocent. He argues:

> Other than the 'trial transcripts' there is no evidence. It was a judgment call that without the trial transcripts I have no way to challenge the call. Nor do I have anything to show a therapist. Without a trial transcript how can the state even prove that I had a trial to base their judgments on.
> (Doc. 11-1) at 11.

Olson was convicted following a bench trial. As set forth above, his remaining claims surround issues stemming from the conditions of his sentence and a revocation.

While Olson did present some new materials, see (Doc. 1-1), none of it persuasively supports a claim of actual innocence. Additionally, this Court fails to see how having a transcript would allow Olson to show that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. Olson has failed to satisfy *Schlup*'s fundamental miscarriage of justice exception. Accordingly, Olson has not overcome the procedural bar preventing federal habeas

review of his defaulted claims.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A certificate of appealability should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the Court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Olson has not made a substantial showing that he was deprived of a constitutional right. Further, because he failed to present his claims to the Montana Supreme Court, reasonable jurists would find no basis to encourage further proceedings. There are no close questions, and there is no reason to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATIONS

1. Mr. Olson's petition (Doc. 1) should be **DISMISSED WITH PREJUDICE**. Claim 1 is without merit, and Claims 2-4 are procedurally defaulted without excuse.

2. The Clerk of Court should be directed to enter, by separate document, a judgment of dismissal.

3. A certificate of appealability should be **DENIED**.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Olson may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Olson must immediately notify the Court of any change in his mailing address</u> by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this 24th day of June, 2015.

/s/ John Johnston<br>
John Johnston<br>
United States Magistrate Judge

---

[4] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.